**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____
                                          )
**ZILPHIA GEE,**                          )
                                          )
    **Plaintiff,**                     )
                                          )
        **v.**                      )    **CIVIL NO. 3:10CV474**
                                          )
**MICHAEL J. ASTRUE,**                    )
    **Commissioner of Social Security,**   )
                                          )
    **Defendant.**                     )
_____)


### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Zilphia Gee, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB") payments.  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 9) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on October 15, 2007, claiming disability due to a sprained neck, lower lumbar sprain, and asthma, with an alleged onset date of July 31, 2006. (R. at 98, 108.)  The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 45-47; 50-51.)  On April 13, 2009, Plaintiff testified before an ALJ.  (R. at 21-35.)  On July 15, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where Plaintiff retained the residual functional capacity to perform her past relevant work as she actually performed it or as generally performed in the national economy. (R. at 12-17.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

# IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability.  (R. at 14.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and cervical spine and asthma, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 14-15.)  The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she cannot work in an environment with concentrated air pollutants/irritants.  (R. at 15-17.)

The ALJ then determined at step four of the analysis that Plaintiff could perform her past relevant work as an accounts investigator, because such work did not require activities precluded by Plaintiff's RFC.  (R. at 25-26.)  Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits.  (R. at 17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot. for Summ. J.)  In support of her position, Plaintiff argues that: (1) the ALJ failed to properly develop the record; (2) the ALJ improperly assessed Plaintiff's RFC; and (3) the ALJ erred in

finding that Plaintiff could perform her past relevant work.  (Pl.'s Mem. in Supp. of Mot. for

Summ. J. ("Pl.'s Mem.") at 3-16.)  Defendant argues in opposition that the Commissioner's final

decision is supported by substantial evidence and application of the correct legal standard such

that it should be affirmed.  (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at

11-22.)

>        **A.      The ALJ adequately developed the record.**

Plaintiff asserts that the ALJ held a "bare-bones hearing, without ever scrupulously and

conscientiously probing into, inquiring of, and exploring for the all relevant facts."  (Pl.'s Mem.

at 6.)  Plaintiff argues that the ALJ erred in demonstrating "minimal effort" to obtain Plaintiff's

medical records and failed to adequately question Plaintiff regarding the identity of her treating

physicians.  (Pl.'s Mem. at 5.)  Plaintiff also asserts that the ALJ failed to adequately question

Plaintiff regarding her impairments and medical treatment for such, nor did the ALJ sufficiently

question Plaintiff regarding her past relevant work.  (Pl.'s Mem at 5-6.)  Plaintiff also contends

that the ALJ erred in not ordering a consultative examination to assess Plaintiff's impairments.

(Pl.'s Mem. at 6-7.)

Much of Plaintiff's argument is based on case law in which plaintiffs were unrepresented,

and, accordingly, the ALJ had a heightened duty to develop the record.  (Pl.'s Mem. at 3-8.)

While the ALJ has a duty to develop the record whether or not a plaintiff is represented (see

Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986); Sandy v. Astrue, 2009 WL 2006882 *15

(N.D. W. Va. July 9, 2009), the duty is heightened where the plaintiff is unrepresented.  Sandy,

2009 WL 2006882 *15.  However, as Defendant notes, and as the record reflects, Plaintiff was

not without representation.  Indeed, Plaintiff retained counsel three days before her hearing

before the ALJ.  (R. at 94-96.)  However, Plaintiff did not inform the ALJ of that development;

nor did counsel sufficiently inform the ALJ of the fact before the hearing date.  (R. at 21, 94-96.)
It appears that while Plaintiff's counsel sent a letter informing the ALJ of Plaintiff's
representation, such documentation was mailed only days before the hearing date, and
consequently not received before the hearing date.  (R. at 94-96.)  Further, the ALJ had already
postponed Plaintiff's hearing once, six months prior, in order to allow her sufficient time to
retain counsel.  (R. at 39-42.)

      Nevertheless, it is fair to treat Plaintiff as though she were unrepresented for the purposes
of the hearing only.  However, the Court is of the opinion that the ALJ adequately developed the
record, regardless of Plaintiff's representation status.  Plaintiff's case is distinguishable from
other Fourth Circuit cases in which the plaintiff was unrepresented and where the Court held that
the ALJ failed to fulfill his obligation to develop the record.  In Walker v. Harris, for example,
the plaintiff had only four years of formal education, was unrepresented, and spent the nineteen
minute hearing testifying via a "barely-coherent, rambling monologue."  642 F.2d 712, 714 (4th
Cir. 1981).  In Marsh v. Harris, the Fourth Circuit found it significant that the ALJ had promised
the plaintiff that he would obtain further evidence from his treating physician; however, the ALJ
failed to do so.  632 F.2d 296, 299 (4th Cir. 1980).  Here, the ALJ followed through on his
promise to obtain Plaintiff's medical records from the only place she claimed to have been
treated.  (R. at 172, 188, 232, 252-74.)  He also focused Plaintiff's testimony on her claim for
disability, rather than allowing her to testify via a "barely-coherent, rambling monologue."
Walker, 642 F.2d at 714.

      Plaintiff initially appeared before the ALJ on November 24, 2008.  (R. at 39.)  However,
in order to allow Plaintiff time to retain counsel, the ALJ offered Plaintiff an extension of the
hearing date.  (R. at 39-41.)  The ALJ also informed Plaintiff that if she returned to the next

hearing date without counsel, that they would still proceed with the hearing.  (R. at 40.)

Additionally, the ALJ noted that there were "a lot of medical records" missing from the file, and

that "we need to get those."  (R. at 40.)  Plaintiff notes this observation by the ALJ, but fails to

note that the ALJ went on to inform Plaintiff that if she could not obtain counsel, she should

notify the SSA so that they could request her medical records in time for the next hearing,

because it was "real important that we get those."  (R. at 41.)  At Plaintiff's April 13, 2009

hearing, after questioning Plaintiff about whether she had spoken with an attorney or obtained

counsel, to which she responded negatively, the ALJ proceeded with the hearing.  (R. at 21.)

The ALJ also inquired as to whether Plaintiff had seen any doctors since December 2008, and

where she received treatment.  (R. at 23.)  Plaintiff responded that she had seen physicians at the

Medical College of Virginia ("MCV"), and clarified that she had not received treatment

anywhere other than MCV.  (R. at 23.)  The ALJ subsequently advised Plaintiff that he would

contact MCV to request "all of your medical records since February 2008 and that way we'll get

all your records that are up to date."  (R. at 23.)  The record reflects that the ALJ did, in fact, do

so.  (R. at 252-74.)

      It appears that Plaintiff has disregarded the ALJ's attempts to complete Plaintiff's

medical record, and instead seeks to fault the ALJ for a duty that should have been performed by

Plaintiff's counsel.[6]  Though Plaintiff asserts that the ALJ exerted minimal effort to obtain her

medical records, it is clear that Plaintiff's records were requested by the SSA on at least three

separate occasions, including after Plaintiff's second hearing before the ALJ.  (R. at 172, 188,

---

[6] Another district court in the Eastern District of Virginia recently noted that an ALJ is
not required to function as a plaintiff's substitute counsel, and though an ALJ bears some
responsibility for the development of the record, an ALJ is also "'entitled to assume that a
claimant represented by counsel is making his strongest case for benefits.'"  Zook v. Comm'r of
Soc. Sec., 2010 WL 1039456 *4 (E.D. Va. Feb. 25, 2010) (citing Clark v. Shalala, 28 F.3d 828,
830-31 (8th Cir. 1994); Nicholson v. Astrue, 341 F. App'x 248, 253 (7th Cir. 2009)).

232, 252-74.)  Plaintiff claims that the ALJ did not question Plaintiff regarding the identity of her treating physicians, and therefore it was "impossible" to determine whether additional evidence regarding her impairments was contained in the records of her medical sources.  (Pl.'s Mem. at 7.)  However, as noted, Plaintiff specifically told the ALJ that she had only received treatment at the "downtown office" of MCV, and the record reflects that the ALJ requested all records concerning Plaintiff from MCV.  (R. at 23, 172, 188, 232, 252-74.)  Furthermore, Plaintiff's counsel could have requested any missing medical records himself, yet the record reflects that he has not done so.

It is also unclear what prejudice these "missing" records have caused Plaintiff.  The Fourth Circuit has held that remand is required where an ALJ fails to "fully inquire into the issues necessary for adequate development of the record, *and such failure is prejudicial to the claimant*."  <u>Marsh</u>, 632 F.2d at 300 (emphasis added); <u>see</u> <u>Zook v. Comm'r</u>, 2010 WL 1039456 *4.  Plaintiff suggests that there are missing records from a Dr. Cohen, who advised Plaintiff to undergo surgery on her neck.  (Pl.'s Mem. at 5.)  However, the record contains treatment notes from other physicians at MCV who have confirmed that Dr. Cohen had advised such, but that Plaintiff was fearful of surgery.  (R. at 253-54.)  Further, the ALJ noted that surgery on Plaintiff's neck had been recommended, but that she had refused it.  (R. at 16.)  Plaintiff also makes reference to a "hand doctor" for her diagnosis of carpal tunnel syndrome.  However, there is no evidence of record that Plaintiff scheduled an appointment with such a physician; nor has Plaintiff ever presented any medical evidence verifying the allegation.  (R. at 165-66.)  Furthermore, the record reflects very little treatment for, or even mention of, carpal tunnel syndrome or hand/wrist/finger pain.  As the court in <u>Zook</u> noted, the plaintiff "had the opportunity to present additional medical evidence if he felt the record did not adequately reflect

10

his current medical condition, and it is reasonable to assume that [the plaintiff] would have done so had that medical evidence supported his disability claim."  2010 WL 1039456 *6.

Plaintiff also suggests that the ALJ's questioning during the "mere eighteen-minute" hearing was inadequate, and that the ALJ did not fulfill his duty to explore for all the relevant facts.  (Pl.'s Mem. at 5-6.)  With regards to Plaintiff's past relevant work, the ALJ inquired as to what duties her average day as an accounts investigator entailed.  (R. at 26.)  Plaintiff testified that she spent an average day in an office using a telephone, computer, and sitting at a desk, and that she did not go out into the field and conduct investigations or surveillance.  (R. at 26.)  Upon further questioning, Plaintiff also testified that she had undergone injections for pain in her back and right hand, which had helped relieve her pain; that she had issues with chronic daily pain on her right side, mostly in her neck and shoulder, as well as in her hands and lower back; that she had been taking prescription pain medication since July 2006 that had helped her pain; that, with medication, her pain on a scale of one to ten was a seven; that she could lift five pounds, but sometimes lifted her fourteen-pound great-grandchild; that she could stand for twenty minutes at a time; that she could sit for fifteen to twenty minutes at a time before needing to shift positions; that she could walk about five blocks before feeling tired; that she required no assistive devices to ambulate; that she had stiffness and tingling in her right hand, but that her left hand was "okay"; that she used a computer to pay bills; that she took pain medication to help her sleep; that she slept only two hours at a time and occasionally napped during the day; that she shopped, cooked, and cleaned; that she used to garden all the time, but now "can't bend like I used to"; that she took care of her grandchildren and great-grandchild; that she liked to walk; that she socialized with her family and friends; that she did not need assistance with her personal care, though she was no longer able to sit down for a bath; that she relocated her bedroom to the first

floor in order to avoid the stairs in her home; that she could minimize the side effects of her

medications by eating before she took them; that she had not had any physical therapy; that she

chose not to have a recommended surgery on her neck; that her physicians had not placed any

permanent restrictions on her; and that her inhaler helped her asthma and she had not been

hospitalized for the condition since July 2006.  (R. at 26-34.)

       As to the questions Plaintiff alleges that the ALJ failed to ask, this Court is not persuaded

that the ALJ erred by such failure.  Plaintiff contends that the ALJ did not inquire as to Plaintiff's

abilities to reach, handle, and finger objects; her abilities to move her head and neck; or to the

physical demands of her past relevant work.[7]  (Pl.'s Mem. at 5-6.)  However, this information is

contained elsewhere in the record, in the form of Plaintiff's written statements and RFC

determinations by state agency physicians.  (R. at 109, 133-41, 149-58, 164-69, 219-25, 243-48.)

Further, yet again is Plaintiff unable to demonstrate how she was prejudiced by the ALJ's failure

to ask such specific questions.  See Zook, 2010 WL 1039456 *4.  Plaintiff has not offered any

medical evidence or statement from a treating physician that she lacks the ability to perform the

physical demands of sedentary work.  Plaintiff has not demonstrated that additional medical

records from an unidentified "hand doctor" will support her argument that she is unable to work.

Likewise, Plaintiff has not demonstrated what prejudicial effect she suffered as a result of the

ALJ apparently not having Dr. Cohen's treatment notes, when the ALJ acknowledged Dr.

Cohen's recommendations and other physicians' reports corroborating such; nor has Plaintiff

attempted to include such notes in the record.

---

[7] Plaintiff also suggests that the ALJ erred in not questioning her regarding the "circumstances surrounding her termination from employment."  (Pl.'s Mem. at 6.)  However, Plaintiff does not cite any support for the contention that such questioning is required; nor does Plaintiff proffer what such circumstances were.

Plaintiff's apparent contention that the length of the ALJ's "bare bones" hearing was insufficient is also meritless.  As in <u>Craig v. Chater</u>, the ALJ adequately questioned Plaintiff regarding her education, her living conditions, her former work, her daily activities, and her subjective complaints of pain, among other things.  76 F.3d at 591 n.3.  Though Plaintiff's hearing was brief, the ALJ questioned her extensively, as detailed earlier, and the Court cannot conclude that Plaintiff's hearing was too brief to be meaningful.  <u>See</u> <u>id.</u>

There is also no merit to Plaintiff's contention that the ALJ erred in not ordering a consultative examination. Plaintiff asserts that a consultative examination was necessary to determine the severity of her back, neck, shoulder, and hand conditions.  (Pl.'s Mem. at 8.) However, the decision to order a consultative examination is within the ALJ's discretion, and is only required if a claimant's medical sources "cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled."  20 C.F.R. § 404.1517.  The Court notes that it appears that Plaintiff's counsel did not request a consultative examination before the ALJ rendered his decision, three months after the hearing.  Regardless, the Court is not persuaded that a consultative examination was necessary to assess Plaintiff's impairments.  As the ALJ noted, Plaintiff's treatment had been very sporadic and "extremely conservative," and there was "very little in the way of objective medical evidence and what there is does not support the alleged severity of [Plaintiff's] subjective complaints."[8]  (R. at 17.)

Medical records reflect a history of back pain, hypertension, and asthma.  Treatment records also reflect that Plaintiff's asthma and hypertension were sufficiently controlled.  (R. at 193-94, 211-12, 253-54, 256-59.)  In April 2006, Plaintiff received an epidural steroid injection

---

[8]The Court notes that Plaintiff has not challenged the ALJ's credibility determination. The ALJ found that Plaintiff was not credible to the extent her statements were inconsistent with the RFC assessment.  (R. at 16.)  The ALJ also noted that Plaintiff's testimony attempted to minimize her activities, which did not appear to be significantly impaired at all.  (R. at 16-17.)

("ESI") for her back pain.  (R. at 185, 207-08.)  In May 2006, treatment notes reflect that

Plaintiff received a note excusing her from data entry work for seventy-two hours, as Plaintiff

had fallen and was experiencing pain in her left wrist, elbow, and shoulder.  (R. at 207-08.)

Plaintiff reported that 800mg of Motrin helped her pain, and her physician advised Plaintiff to

schedule a follow-up appointment if she was not significantly improved in ten days to two

weeks.  (R. at 207-08.)  Records reflect that Plaintiff returned to her physician three months later,

after stubbing her toe.  (R. at 205-06.)  Though Plaintiff returned two weeks thereafter, still

complaining of a painful toe, she was able to walk and weight-bear.  (R. at 203-06.)  Plaintiff

returned on November 1, 2006, complaining of shortness of breath and a cold, and again on

November 30, 2006, because she had used all of her hypertension medication.  (R. at 199-202.)

In February 2007, treatment records reflect that Plaintiff complained of a cold and was taking

over-the-counter medication for relief.  (R. at 197-98.)  A general examination in April 2007 did

not reflect complaints of hand pain or disabling back pain; nor did a routine visit in July 2007.

(R. at 193-96.)  In September 2007, Plaintiff presented with complaints of thigh and hand pain.

(R. at 191-92.)  Plaintiff reported that she had received an ESI in her back a year prior, and that it

was very beneficial in resolving both her thigh pain and her limp.  (R. at 191-92.)  Notes indicate

that Plaintiff was taking Motrin, which provided some temporary relief, and that she had not seen

anyone recently for her back.  (R. at 191-92.)  Plaintiff also reported that her current thigh pain

"[felt] like it did last year."  (R. at 191.)  It was noted that Plaintiff's hand pain was probably

degenerative joint disease, and she was advised to continue taking 800mg of Motrin.  (R. at 192.)

With regards to Plaintiff's back pain, a November 2007 MRI of her lumbar spine revealed mild

degenerative changes, and a December 2007 MRI of her cervical spine revealed moderate

degenerative changes with a broad-based bulging of the C4-C5 disc.  (R. at 238-41.)  A cervical

myelogram in January 2008 revealed mild degenerative changes at C2-C3 and C3-C4, and moderate degenerative changes at C4-C5.  (R. at 236-37.)  The myelogram also revealed swelling of the nerve roots at C5-C6 and C6-C7, especially on the left.  (R. at 237.)

After Plaintiff's MRIs in November and December 2007, and her myelogram in January 2008, it appears that Plaintiff did not return for treatment until September 2008, when she complained of head pain after hitting her head.  (R. at 264-65.)  Records from November 2008 reflect that Plaintiff was still experiencing headaches from the episode two months prior.  (R. at 262-63.)  In December 2008, at a scheduled follow-up visit, Plaintiff reported that she was having chronic neck pain, without numbness or tingling, and continued to experience daily headaches since hitting her head on a car door.  (R. at 256.)  Notes reflect that Plaintiff would see Dr. Cohen for her neck pain, and that her headaches were improving and appeared musculoskeletal.  (R. at 258.)  Plaintiff was prescribed 75mg diclofenac for her pain.  (R. at 258.)  Plaintiff's final treatment record is from April 2009, when she presented with complaints of cold symptoms and an evaluation of her medications.  (R. at 253.)  Notes reflect that Dr. Cohen had advised surgery for her neck pain, but that Plaintiff was very afraid, and that she had received steroid injections for the tingling in her hands.  (R. at 253.)  Plaintiff requested a new prescription for pain medication because she had lost the prescription she received at her previous visit, approximately four months prior.  (R. at 253.)

A state agency physician opined in December 2007 that Plaintiff was capable of performing the demands of light work.  (R. at 219-25.)  Another state agency physician, Dr. Martin Cader, opined in March 2008 that Plaintiff was capable of performing only sedentary work.  (R. at 243-48.)  The ALJ did not award controlling weight to the physicians' opinions, but it is clear that his ultimate RFC determination was consistent with Dr. Cader's recommendations.

Furthermore, as noted, the ALJ found Plaintiff's admitted activities of daily living to be indicative of Plaintiff's ability to perform SGA.  The ALJ noted that Plaintiff was "totally independent" in all activities of daily living and was able to perform a wide variety of physical and social activities.  (R. at 17.)  Though the ALJ acknowledged that Plaintiff had severe impairments, he simply found that the limited amount of objective medical evidence did not support the alleged severity of Plaintiff's complaints.  (R. at 17.)  It was therefore unnecessary to order a consultative examination, because the ALJ was able to make an informed decision regarding disability based on the medical records before him.

There appears to be no dereliction of duty on the ALJ's part where Plaintiff was represented for all purposes other than her actual hearing before the ALJ, and where sufficient evidence was elicited at the hearing.  Accordingly, the Court recommends that the ALJ followed the correct legal standards and adequately developed the record.

**B.      The ALJ properly assessed Plaintiff's RFC.**

Plaintiff argues that the ALJ failed to perform a function by function RFC assessment, pursuant to SSR 96-8p.  (Pl.'s Mem. at 9-11.)   Plaintiff also asserts that the ALJ failed to include a narrative discussion explaining how the evidence supported his conclusions, failed to describe the maximum amount of work-related activities Plaintiff could perform, and failed to explain how any material inconsistencies in the record were resolved.  (Pl.'s Mem. at 11.)

Plaintiff cites a district court case from the District of Columbia to support her contention that the ALJ is required to discuss each of the exertional factors that compile the RFC determination in detail, and not merely consider them during his decision-making process.  Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 68 (D.D.C. 2006).  However, Plaintiff fails to cite a subsequent opinion from another court in the same district, which expressly disagreed with the

bright-line rule that the court in <u>Lane-Rauth</u> attempted to set.  <u>See</u> <u>Banks v. Astrue</u>, 537 F. Supp. 2d 75, 84-85 (D.D.C. 2008).  The court in <u>Banks</u> noted that while its Circuit Court had not specifically addressed whether the ALJ must undertake a specific discussion of each of the exertional limitations in his RFC analysis, some courts had found that the function-by-function analysis is not required.  537 F. Supp. 2d at 84.  The court in <u>Banks</u> also noted the holding of <u>Lane-Rauth</u>, yet nevertheless found that a function-by-function analysis of a plaintiff's RFC was not required, and that SSR 96-8p does not require such a mandate.  <u>Banks</u>, 537 F. Supp. 2d at 85. The court found that SSR 96-8p requires that an ALJ's RFC determination must *address* the exertional limitations, but written articulation of such limitations is not required, especially where the ALJ provides a thorough discussion of a plaintiff's limitations.  <u>Id</u>.

Here, the ALJ provided a thorough discussion of Plaintiff's RFC, considering the medical evidence of record as well as Plaintiff's testimony and written statements for the record.  As noted earlier, the ALJ found that Plaintiff's treatment for her impairments was conservative, and the record reflects that Plaintiff received only sporadic treatment.  Also, state agency physicians opined on Plaintiff abilities to perform work-related activities, and did not suggest that Plaintiff had any manipulative limitations.  (R. at 219-25, 243-48.)  Nor have Plaintiff's physicians suggested that she had any manipulative limitations or limitations relating to her degenerative disc disease.  Plaintiff testified and submitted written statements demonstrating that she was able to lift at least five pounds, and occasionally her fourteen-pound great-grandchild, as well as use a computer to pay bills, cook and clean, and carry out her personal care.  (R. at 28-31, 133-41, 149-58.)  Overall, Plaintiff described a lifestyle consisting of daily activities that "[did] not seem to be significantly impaired at all."  (R. at 17.)

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  Id.  Based on the medical record and Plaintiff's own statements, it is the Court's recommendation that substantial evidence supports the ALJ's RFC assessment that Plaintiff was capable of performing sedentary work.  A remand for further articulation is unnecessary, as the Court is able to discern what the ALJ did and why he did it.[9]  Accordingly, the ALJ's decision should be affirmed in this regard.

### C.     The ALJ properly found that Plaintiff could perform her past relevant work.

Plaintiff finally argues that the ALJ failed to properly determine that Plaintiff was capable of performing her past relevant work, in that he did not make any findings of fact as to the physical and mental demands of her past occupation as an accounts investigator.  (Pl.'s Mem. at 13-14.)  Plaintiff also asserts that her past relevant work as an accounts investigator, as she performed it, was greater than sedentary.  (Pl.'s Mem. at 15.)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  The burden is still on Plaintiff at step four to prove that she is unable to perform her past relevant work.  Plaintiff must "show an inability to return to her previous work (i.e., occupation), and not simply to her specific prior job."  DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133,

---

[9] The Fourth Circuit, as the controlling authority for this Court, has held that a reviewing court must be able to determine what the basis is for the ALJ's ultimate decision.  See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999).  Indeed, the Court has recognized that "brevity can foster clarity."  Lane Hollow Coal Co. v. Director, OWCP, 137 F.3d 799, 803 (4th Cir. 1998).

135 (2d Cir. 1981).).  Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work. Id.

Plaintiff cites the Eighth Circuit case of Groeper v. Sullivan to support her position that the ALJ did not fulfill his duty to make specific findings of fact as to the physical and mental demands of her past relevant work.  932 F.2d 1234, 1238-39 (8th Cir. 1991.)  However, Plaintiff fails to mention that in Groeper, the Eighth Circuit recognized that the ALJ's deficiency was his failure to procure evidence regarding the *mental* demands of the plaintiff's past relevant work. Id. at 1239.  The Eighth Circuit explicitly stated that the record did contain some evidence of the physical demands of the plaintiff's past relevant work, in the form of reports the plaintiff had completed which detailed the duties he performed in his past occupations.  Id.  However, there was no evidence regarding the mental demands of such occupations.  Id.

Here, Plaintiff also completed forms detailing the duties of her past relevant work.  (R. at 109.)  The ALJ also questioned Plaintiff about her typical day as an accounts investigator.  (R. at 26.)  It does not appear that the ALJ "overlooked the fact" that Plaintiff's description of her past relevant work as she performed it was greater than sedentary.  (Pl.'s Mem. at 15.)  Plaintiff contends that the work could not be sedentary, as it required more than two hours of standing and walking.  (Pl.'s Mem. at 15.)  However, on the same form in which Plaintiff claimed she stood for two hours and walked for three hours a day, she also claimed that she sat for eight hours in an eight-hour workday.  (R. at 109.)  Further, as noted, Plaintiff told the ALJ that her average day as an accounts investigator entailed using a telephone, computer, and sitting at a desk.  (R. at 26.)  Treatment notes also indicate that Plaintiff reported that she did "data entry all day."  (R. at 209.)  It therefore does not appear that Plaintiff's work was performed at a greater than sedentary level.

Regardless, the ALJ was not required to find that Plaintiff retained the ability to perform her past work as she actually performed it in order to her find her not disabled.  It was sufficient for the ALJ to conclude that Plaintiff was not disabled because she could perform her past work as it is generally performed in the national economy.  (R. at 17.)  Further, the only additional restriction on Plaintiff's RFC, her preclusion from working in an environment with concentrated air pollutants/irritants, would not have a significant impact on the occupational base.  See SSR 83-14, 85-15.  Simply stated, the ALJ was not required to make any further findings regarding Plaintiff's ability to perform her past relevant work, as it is sedentary in nature and Plaintiff is capable of performing sedentary work.  Accordingly, it is the Court's recommendation that the ALJ's decision be affirmed.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 9) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____

DENNIS W. DOHNAL

UNITED STATES MAGISTRATE JUDGE

Date:  July 21, 2011

Richmond, Virginia